**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PACIFICA MECHANICSBURG LLC, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 1:25-cv-01663 |
| | : | |
| BJ'S WHOLESALE CLUB, INC., | : | |
| Defendant. | : | |

**PLAINTIFF'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT'S**
**COUNTERCLAIMS**

Plaintiff Pacifica Mechanicsburg LLC, through its counsel, Saxton & Stump LLC,

submits its Answer and Affirmative Defenses to the Counterclaims of Defendant BJ's Wholesale

Club, Inc., as follows:

**ANSWER TO COUNTERCLAIM**

1.      Denied.  This case arises from BJ's causing repeated and long-lasting delays in

obtaining required approvals for the Project, failing to construct its Building in accordance with

the approved plans, and otherwise interfering with the progress of Pacifica's work.

2.      This is a legal conclusion to which no response is required.  To the extent a

response is required, denied.  BJ's is not entitled to liquidated damages and fails to state a claim

for liquidated damages under the Lease and Pennsylvania law.  First, BJ's fails to state a claim

for liquidated damages under the plain meaning of the Lease.  As explained in the Court's March

26, 2026 Opinion, "under a plain meaning interpretation of the [Lease], the parties did not

together revise Schedule 4.1B to set actual calendar dates keyed off the commencement of Phase

I Site Work, thus the Utilities Date and Site Work Completion Date were never 'established'

within the meaning of Sections 4.2(d)(ii) and (iii), and those liquidated-damages provisions have

not been triggered."  ECF 38, Op. at 13-14.  Second, there is no latent ambiguity in these Lease

terms.  As indicated in BJ's own pleadings and exhibits, Pacifica's counsel informed BJ's counsel on October 4, 2024:

> ***Section 4.1(h) [of the Lease] states that "the construction timetable attached hereto as Schedule 4.1B will be revised by Landlord and Tenant to insert the appropriate dates keyed off of the commencement of the Phase I Site Work."*** Clearly, the Lease intended further revisions to Schedule 4.1B based on the receipt of final Approvals to complete the Phase I Site Work. This would include revisions to the final Building Pad Turnover Date based on when Approvals are obtained and site work commences.
> ***While neither Landlord nor Tenant have updated Schedule 4.1B***, Landlord reserves the right to pursue amendments to Schedule 4.1B as contemplated under the Lease. We believe an update to Schedule 4.1B is necessary to reflect realistic milestones based on the Approvals Date.

ECF 25, BJ's Counterclaim ¶ 74 & Exhibit 6 (ECF 20-1 at 23-28 of 95); ECF 20-1 at 25 of 95 (also in ECF 20-1 at 84-89 of 95) ("**Counterclaim Exhibit 6**") Third, the liquidated damages provisions in the Lease are invalid and unenforceable under Pennsylvania law because, *inter alia*, BJ's has not alleged and cannot prove that, at the time the Lease was executed, BJ's had performed any pre-estimate of probable actual damages.  BJ's failure to perform a forecast of estimated actual damages at the time of Lease execution renders the liquidated damages provision invalid and unenforceable.  D.A. Nolt, Inc. v. Philadelphia Mun. Auth., 463 F. Supp. 3d 539, 547 (E.D. Pa. 2020); Hanrahan v. Audubon Builders, Inc., 614 A.2d 748, 751 (Pa. Super. 1992); Brinich v. Jencka, 757 A.2d 388, 402 (Pa. Super. 2000); Giant Food Stores, Inc. v. Kmart Corp., No. CIV. A. 94-6817, 1996 WL 432487, at *1–2 (E.D. Pa. July 30, 1996).  Fourth, the liquidated damages provisions in the Lease upon which BJ's relies are also invalid and unenforceable because they are punitive, doubled per-diem penalties that are disproportionate to the value of the performance promised and any injury alleged to have actually occurred.  Robins Motor Transp., Inc. v. Associated Rigging & Hauling Corp., 944 F. Supp. 409, 411-12 (E.D. Pa. 1996); Keck v. Bleber, 24 A. 170, 170 (Pa. 1892); Holt's Cigar Co. v. 222 Liberty Assocs., 591

A.2d 743, 748-49 (Pa. Super. 1991); <u>Hanrahan v. Audubon Builders, Inc.</u>, 614 A.2d 748, 751 (Pa. Super. 1992).

3.      This is a legal conclusion to which no response is required.  To the extent a response is required, denied.  By way of further answer, see Paragraph 2, above.

4.      This is a legal conclusion to which no response is required.  To the extent a response is required, denied.  By way of further answer, see Paragraph 2 above.  Pacifica specifically denies BJ's characterization of the alleged timetables and any alleged requirement to engage a contractor by a particular date.  Pacifica specifically denies BJ's allegation that there was "seven idle months."  With respect to the Pennsylvania Court of Common Pleas, the record in the Pennsylvania state litigation speaks for itself and demonstrates not only that BJ's lost twice in attempting to take over the Project, but also that the Pennsylvania court awarded Pacifica attorney's fees and costs.  <u>See</u> <u>BJ's Wholesale Club, Inc. v. Pacifica Mechanicsburg LLC</u>, No. 2024-10866 (Cumberland Cty. C.C.P.) (the "**State Litigation**").  True and correct copies of the November 26, 2025 Findings of Fact, Conclusions of Law, and Order of Court and the February 27, 2026 Opinion Pursuant to Pa. R.A.P. 1925 entered by the Court of Common Pleas are attached as **<u>Exhibit A</u>**.

5.      This is a legal conclusion to which no response is required.  To the extent a response is required, denied.  By way of further answer, BJ's changed utility locations without properly or timely notifying Pacifica, which necessitated a redesign.

6.      This is a legal conclusion to which no response is required.  To the extent a response is required, denied.  By way of further answer, BJ's mischaracterizes the parties' interaction and the Lease.

7.     This is a legal conclusion to which no response is required.  To the extent a response is required, denied.  By way of further answer, BJ's mischaracterizes the parties' interaction and the Lease.  The Amended Complaint in this action is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

8.     This is a legal conclusion to which no response is required.  To the extent a response is required, denied.  By way of further answer, BJ's mischaracterizes the parties' interaction and the Lease.

9.     This is a legal conclusion to which no response is required.  To the extent a response is required, denied.  By way of further answer, Pacifica admits that it has rejected BJ's improper demand that Pacifica recognize and consent to abatements of Minimum Rent.

10.    This is a legal conclusion to which no response is required.

## PARTIES, JURISDICTION AND VENUE

11.    Admitted.

12.    Admitted.

13.    Admitted.

14.    This is a legal conclusion to which no response is required.

15.    This is a legal conclusion to which no response is required.

16.    This is a legal conclusion to which no response is required.  To the extent a response is required, it is admitted that a substantial part of the events or omissions giving rise to the matter arose in this district.

## BACKGROUND

17.    Denied. After reasonable investigation, Pacifica is without knowledge or

information sufficient to form a belief as to the truth of the allegations in this paragraph or the details of BJ's business model.

18.    Denied. After reasonable investigation, Pacifica is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph or the details of BJ's competitors and customers.

19.    Denied. After reasonable investigation, Pacifica is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph or the details of residents' behavior with respect to wholesale clubs.

20.    This is a legal conclusion to which no response is required.  To the extent a response is required, denied.  By way of further answer, after reasonable investigation, Pacifica lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

21.    Denied. After reasonable investigation, Pacifica is without knowledge or information sufficient to form a belief as to BJ's decisions.

## THE ORIGINAL LEASE

22.    Admitted in part, denied in part.  Pacifica admits BJ's and Pacifica entered into a Lease dated October 14, 2022.  The remaining allegations are denied.  The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

23.    Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

24.    Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

25.     Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

26.     Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

27.     Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

28.     Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

29.     Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

30.     Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

31.     Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

32.     Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

33.     Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

34.     Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

35.     Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

36. Denied. The Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

37. This is a legal conclusion to which no response is required. To the extent a response is required, denied. By way of further answer, Pacifica admits that BJ's and Pacifica entered into a First Amendment to the Lease dated March 6, 2024. The Lease, First Amendment, and correspondence are documents which speak for themselves. Therefore, any characterization of their contents is denied.

38. Denied. The Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied. By way of further answer, see Paragraph 2.

### THE FIRST AMENDMENT TO THE LEASE

39. Admitted in part, denied in part. Pacifica admits one of the key approvals for the Project was the Land Development Plan ("LDP"), which required approval by Hampden Township ("Township"). Pacifica denies the remaining allegations. The Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

40. Admitted in part, denied in part. Pacifica admits approval of the LDP required submission to the Township for approval of the design of the sanitary sewer and storm sewer systems. Pacifica denies any suggestion that all aspects of the design and submission were Pacifica's responsibility, as Pacifica relied on BJ's for certain design and submission information. The design of the sanitary, stormwater, water, gas, and electric systems required input from the designer of the building to be served by those systems, *i.e.*, BJ's. BJ's failed to provide that timely input.

41. Denied. The Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

42.     Denied.  BJ's failed to submit accurate information for sanitary and storm sewer connections to Pacifica in a timely manner, and in some cases never submitted accurate information.

43.     Denied.  Pacifica admits only that each revision of the sewer plans caused delay and the Township approved the Final LDP on or about April 19, 2024.  BJ's caused the extensive delays.

44.     Denied.  Pacifica admits only that one of the necessary Approvals was a Highway Occupancy Permit ("HOP") issued by the Pennsylvania Department of Transportation ("PennDOT"), that PennDOT initially gave tentative approval of the right-in/right-out ("RI/RO") concept, and that PennDOT then reversed its position.  Pacifica denies the remaining allegations.  PennDOT's denial and the Lease are documents which speak for themselves.  Therefore, any characterization of their contents is denied.

45.     This is a legal conclusion to which no response is required.  To the extent a response is required, denied.  The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.  By way of further answer, Pacifica denies the suggestion that Pacifica is to blame for delay of necessary approvals.  BJ's caused extensive delays that resulted in Pacifica being unable to complete its work within the timeframe originally contemplated when the Lease was signed. In fact, BJ's delays and unreasonable demands made it impossible to even develop a reasonable and realistic schedule for the work.

46.     This is a legal conclusion to which no response is required.  To the extent a response is required, denied.  The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

47.     Denied.  Pacifica admits that BJ's informed Pacifica that a Costco was planned for the West Shore.  Pacifica denies the remaining allegations.  After reasonable investigation, Pacifica is without knowledge or information sufficient to form a belief as to the details of BJ's first learning about the plans for the West Shore Costco.

48.     Denied.  After reasonable investigation, Pacifica is without knowledge or information sufficient to form a belief as to the details of BJ's thoughts and needs.  Pacifica admits only that the parties negotiated amendments to the Lease, all of which speak for themselves.

49.     Admitted.

50.     Denied.  The First Amendment to the Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

51.     Denied.  The First Amendment to the Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

52.     Denied.  The First Amendment to the Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

53.     Denied.  The First Amendment to the Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

54.     Denied.  The First Amendment to the Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

55.     Denied.  The First Amendment to the Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

56.     Denied.  The First Amendment to the Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

## BJ'S INTERFERES WITH PACIFICA'S PHASE II SITE WORK

57.    Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

58.    Admitted.

59.    Denied.  The letters are documents which speak for themselves.  Therefore, any characterization of their contents is denied.

60.    Denied.  Pacifica admits only that BJ's commenced construction of the Building.  After reasonable investigation, Pacifica lacks knowledge or information sufficient to form a belief as to why BJ's decided to commence construction when it did.

61.    Denied.  Pacifica admits only that it learned at some point that BJ's had commenced construction.

62.    Denied.  After reasonable investigation, Pacifica is without knowledge or information sufficient to form a belief as to the date and confirmation of the meaning that the Building was "weather tight," or if or why BJ's could not proceed further.  Pacifica was not responsible for any delays in the completion of referenced utility work.

63.    Denied.

64.    Denied.  After reasonable investigation, Pacifica is without knowledge or information sufficient to form a belief as to what "BJ's learned" and when.

65.    Denied.  Pacifica admits that Akhil Israni had meetings with BJ's regarding the Project in August and September 2024.  The remaining allegations and BJ's characterizations of those meetings are denied.

66.    Denied.  BJ's mischaracterizes these events.  Kinsley Construction unexpectedly notified Pacifica that it would not be submitting a bid to Pacifica because, unbeknownst to

Pacifica, BJ's had contacted Kinsley Construction as part of BJ's efforts to commandeer the Project. To the extent BJ's refers to a document which speaks for itself, any characterization of its contents is denied.

67. Denied. The letter is a document which speaks for itself. Therefore, any characterization of its contents is denied. Pacifica also denies any and all defaults alleged in the letter.

68. Denied. The letter is a document which speaks for itself. Therefore, any characterization of its contents is denied.

69. This is a legal conclusion to which no response is required. To the extent a response is required, denied. The Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied. Why Pacifica was delayed is set forth in its Amended Complaint, which is incorporated by reference.

70. Denied. After reasonable investigation, Pacifica lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph. The bid package and transmittal are documents which speak for themselves. Therefore, any characterization of their contents is denied. By way of further answer, BJ's has mischaracterized these meetings and Pacifica did not make any demands for additional payments or a rent increase.

## THE COMMON PLEAS COURT DENIES BJ'S REQUESTS FOR AN INJUNCTION (TWICE) AND AWARDS ATTORNEY'S FEES AND COSTS TO PACIFICA

71. Denied. The Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

72.     Denied.  The letter BJ's characterizes is a document which speaks for itself. Therefore, any characterization of its contents is denied.  Pacifica denies that it had any obligation to disclose bidding information to BJ's.

73.     Denied.  The letter BJ's characterizes is a document which speaks for itself. Therefore, any characterization of its contents is denied.

74.     Denied.  The letter BJ's characterizes is a document which speaks for itself. Therefore, any characterization of its contents is denied.  In misrepresenting the contents of this letter, BJ's conspicuously omits any reference to the facts set forth in the letter indicating that dates were never inserted into the Construction Timetable.  See Paragraph 2 above.

75.     Denied.  The record in the Pennsylvania State Litigation speaks for itself and demonstrates not only that BJ's lost twice in attempting to take over the Project, but also that the Pennsylvania court awarded Pacifica attorney's fees and costs.  See Paragraph 4 above.

76.     Denied.  The record in the Pennsylvania State Litigation speaks for itself and demonstrates not only that BJ's lost twice in attempting to take over the Project, but also that the Pennsylvania court awarded Pacifica attorney's fees and costs.  See Paragraph 4.  The record also indicates that two state court judges rejected BJ's mischaracterization of conversations in chambers.  See Exhibit A.

77.     Denied.  The contracts and State Litigation record are documents which speak for themselves.  Therefore, any characterization of their contents is denied.  Pacifica admits that, on or about November 7, 2024, Pacifica informed BJ's that it had entered into two contracts with prime contractor H&K Group, Inc.  Those contracts were not connected in any way to the State Litigation or the alleged prospect of a preliminary injunction. Pacifica knew BJ's would not get

12

an injunction and, in fact, BJ's case was so weak that Pacifica did not have to put on a defense before the Court denied the injunction request.  See Paragraph 4 above.

78.    Denied.  The State Litigation record speaks for itself.  Therefore, any characterization of its contents is denied.

79.    Denied.  The State Litigation record speaks for itself.  Therefore, any characterization of its contents is denied. Pacifica has not abandoned its position regarding the Construction Timetable and was not concerned about judicial scrutiny.

80.    Denied.  Pacifica admits that H&K Group, Inc. commenced work on or about December 2, 2024.

81.    Denied.  The State Litigation record speaks for itself.  Therefore, any characterization of its contents is denied.

## PACIFICA MEETS THE CONSTRUCTION DEADLINE EXPRESSED BY BJ'S IN THE STATE LITIGATION

82.    Pacifica admits that H&K Group, Inc. commenced work on or about December 2, 2024.

## SEWER INSTALLATION

83.    Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

84.    Denied. The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.  Pacifica specifically denies BJ's characterization of the alleged timetables and any alleged requirement to engage a contractor by a particular date.  To the extent a response is deemed required, Pacifica denies the suggestion that Pacifica is to blame for delay.  BJ's caused extensive delays that resulted in Pacifica being unable to complete its work within the timeframe originally contemplated when the Lease was signed. In fact, BJ's

13

delays and unreasonable demands made it impossible to even develop a reasonable and realistic schedule for the work.

85.     Denied.  Pacifica admits the grease trap is an essential element of the sanitary sewer system within the Building, that there was a discrepancy in the location where BJ's decided to build the grease trap line compared to the location identified on the LDP, that BJ's unilaterally relocated the grease trap lateral by approximately 16 feet along the building wall, and that this discrepancy ultimately required the redesign and reconstruction of a large portion of the wastewater system for the LDP.  BJ's did not notify Pacifica of the relocated grease trap.

86.     Denied.

87.     Denied.  BJ's did not communicate the grease trap relocation, which Pacifica's consultant discovered in October 2024.  Pacifica admits that the discovery required a new modification to the LDP, which Pacifica undertook.

88.     Denied.  Pacifica explained to BJ's that there were two options to correct the improperly located grease trap line. One was to move the line to its original location as shown on the approved plans, and the second was to redesign the sanitary system. BJ's refused to move the grease trap line. The Lease speaks for itself and BJ's characterization is incorrect.

89.     Denied.  Pacifica admits that there were also discrepancies with respect to the stormwater drainage system, but specifically denies Pacifica was to blame for the discrepancies. BJ's caused delays by unilaterally deciding not to follow the LDP or coordinate with Pacifica.

90.     Denied.  It was BJ's who caused a five-month delay in the ability to obtain Township approval of the sanitary sewer and stormwater system redesign until on or about March 27, 2025.

91.     Denied.  The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.  The Lease does not identify a Utilities Date or a Site Work Completion Date that can be enforced against Pacifica.  See Paragraph 2.

## HIGHWAY ACCESS

92.     Denied.  The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.  After reasonable investigation, Pacifica is without knowledge or information sufficient to form a belief as to RI/RO access being standard or repeatedly approved by PennDOT.

93.     Denied.  Pacifica admits that it timely submitted the necessary applications to PennDOT, which initially gave tentative approval of the RI/RO concept.

94.     Denied.  Pacifica admits that PennDOT revoked its prior tentative approval of the RI/RO design in or about January 2024.  Pacifica lacks knowledge or information sufficient to form a belief whether a change to the District Engineer at PennDOT was the reason for PennDOT's decision.

95.     Denied.  Pacifica admits that at BJ's direction, Pacifica attempted to persuade PennDOT to reconsider its decision and accept the RI/RO access and that Pacifica's efforts fulfilled its obligations under the Lease.  Pacifica specifically denies any suggestion that BJ's decision to challenge the PennDOT decision was a "joint" decision.  As BJ's readily admits, rather than accepting PennDOT's disapproval, BJ's *directed* Pacifica to challenge it.  ECF 21, Pl. Am. Compl. ¶ 79; ECF 25, Def. Answer ¶ 79.  That direction was contrary to Pacifica's recommendation and warnings about the delay associated with those efforts.

96.     Denied.  Pacifica admits BJ's challenge was unsuccessful and—only after PennDOT declined to reconsider its decision—BJ's accepted the need for ROO access in March

2024. Pacifica specifically denies any suggestion that BJ's readily accepted the need for ROO access. To the contrary, only after a great deal of discussion into March 2024 did BJ's finally agree to ROO access on or about March 18, 2024, after months of additional delay.

97.    Denied. Pacifica admits that PennDOT approved the new ROO traffic plan on or about July 23, 2024, and issued the HOP on or about August 28, 2024, and that Pacifica contracted with H&K on or about November 7, 2024. The H&K contract did not come about because of the State Litigation.

98.    Denied. After reasonable investigation, Pacifica is without knowledge or information sufficient to form a belief as to the "ordinary course" described by BJ's. Pacifica specifically denies BJ's suggestion that the traffic equipment excuses BJ's delay or caused any delay to the Project or to the opening of the new BJ's warehouse club.

99.    Denied. The Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied. Pacifica admits that temporary highway access was completed on or about March 18, 2025 and was sufficient for BJ's to obtain a Certificate of Occupancy and open the club to the public on September 1, 2025. Pacifica specifically denies BJ's suggestion that the traffic equipment excuses BJ's delay or caused any delay to the Project.

## COMPLETION OF PHASE II SITE WORK

100.    Denied. Pacifica admits that BJ's received a permanent Certificate of Occupancy for the Building and Fueling Facility on August 26, 2025, and was therefore able to open the club to the public on September 1, 2025.

101.    Denied. This is a legal conclusion to which no response is required. To the extent a response is deemed required, denied. The Lease is a document which speaks for itself.

16

Therefore, any characterization of its contents is denied.  The Lease does not identify a Utilities Date or a Site Work Completion Date that can be enforced against Pacifica.  See Paragraph 2.

## COUNT I
### (Declaratory Judgment – Breach of Contract)

102.    Pacifica incorporates by reference Paragraphs 1 through 101, above.

103.    Admitted.

104.    This is a legal conclusion to which no response is required.  The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.  The Lease does not identify a Utilities Date or a Site Work Completion Date that can be enforced against Pacifica.  See Paragraph 2.

105.    This is a legal conclusion to which no response is required.

106.    The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

107.    The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

108.    Denied.  This is a legal conclusion to which no response is required.  The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.  The Lease does not identify a Utilities Date or a Site Work Completion Date that can be enforced against Pacifica.  See Paragraph 2.

109.    This is a legal conclusion to which no response is required.  The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

110.    This is a legal conclusion to which no response is required.  The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.  The

17

Lease does not identify a Utilities Date or a Site Work Completion Date that can be enforced against Pacifica.  See Paragraph 2.

111.    The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.  The Lease does not identify a Utilities Date or a Site Work Completion Date that can be enforced against Pacifica.  See Paragraph 2.

112.    This is a legal conclusion to which no response is required.  The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.  The Lease does not identify a Utilities Date or a Site Work Completion Date that can be enforced against Pacifica.  See Paragraph 2.

113.    This is a legal conclusion to which no response is required.  The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.  The Lease does not identify a Utilities Date or a Site Work Completion Date that can be enforced against Pacifica.  See Paragraph 2.

114.    This is a legal conclusion to which no response is required.  The Lease is a document which speaks for itself.  Therefore, any characterization of its contents is denied.  The Lease does not identify a Utilities Date or a Site Work Completion Date that can be enforced against Pacifica.  See Paragraph 2.

115.    This is a legal conclusion to which no response is required.  The notice is a document which speaks for itself.  Therefore, any characterization of its contents is denied.  The Lease does not identify a Utilities Date or a Site Work Completion Date that can be enforced against Pacifica.  See Paragraph 2.

116.    The Amended Complaint is a document which speaks for itself.  Therefore, any characterization of its contents is denied.

18

117. Denied. Pacifica admits that BJ's paid rent. The Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

118. The Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

119. This is a legal conclusion to which no response is required. The Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor on the Defendant's Counterclaims.

## COUNT II
### (Attorneys' Fees)

120. Pacifica incorporates by reference Paragraphs 1 through 119, above.

121. This is a legal conclusion to which no response is required. The Lease is a document which speaks for itself. Therefore, any characterization of its contents is denied.

122. Admitted.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor on the Defendant's Counterclaims.

### AFFIRMATIVE DEFENSES TO COUNTERCLAIMS

### First Affirmative Defense

Pacifica incorporates Paragraphs 1-122 above and asserts the same as defenses.

### Second Affirmative Defense

BJ's Counterclaims fail to state a claim upon which relief can be granted.

### Third Affirmative Defense

BJ's fails to state a claim for liquidated damages under the Lease. The Lease does not identify a Utilities Date or a Site Work Completion Date that can be enforced against Pacifica to

19

trigger liquidated damages.  As explained in the Court's March 26, 2026 Opinion, "under a plain meaning interpretation of the [Lease], the parties did not together revise Schedule 4.1B to set actual calendar dates keyed off the commencement of Phase I Site Work, thus the Utilities Date and Site Work Completion Date were never 'established' within the meaning of Sections 4.2(d)(ii) and (iii), and those liquidated-damages provisions have not been triggered."  ECF 38, Op. at 13-14.  BJ's fails to allege and cannot prove that the parties—either of them or both—ever revised the Construction Timetable.

**Fourth Affirmative Defense**

BJ's fails to state a claim for liquidated damages under Pennsylvania law, and the liquidated damages provisions in the Lease are invalid and unenforceable penalties.  For a liquidated damages clause to be valid and enforceable, it must be a reasonable pre-estimate of probable actual damages that is determined at the time the parties enter into the contract.  D.A. Nolt, Inc. v. Philadelphia Mun. Auth., 463 F. Supp. 3d 539, 547 (E.D. Pa. 2020); Hanrahan v. Audubon Builders, Inc., 614 A.2d 748, 751 (Pa. Super. 1992); Brinich v. Jencka, 757 A.2d 388, 402 (Pa. Super. 2000).  Failure to perform a reasonable forecast of estimated actual damages at the time the parties enter into the contract renders the liquidated damages provision unenforceable.  D.A. Nolt, 463 F. Supp. 3d at 547.  In addition, liquidated damages clauses are unenforceable penalties if they are disproportionate to the value of the performance promised or the injury that has actually occurred.  Robins Motor Transp., Inc. v. Associated Rigging & Hauling Corp., 944 F. Supp. 409, 411-12 (E.D. Pa. 1996).  In determining proportionality, courts consider the actual amount of damages suffered due to delayed construction relative to the liquidated amount, to determine whether it was so disproportionate to actual damages as to afford a windfall. Holt's Cigar Co. v. 222 Liberty Assocs., 591 A.2d 743, 748 (Pa. Super. 1991).

20

BJ's fails to allege and cannot prove that it ever performed a reasonable forecast of estimated actual damages at the time the parties entered into the Lease, and BJ's has not alleged and cannot prove that the liquidated damages are proportionate to the value of the performance promised or the injury that has actually been alleged to occur.  BJ's does not allege actual injury.

### Fifth Affirmative Defense

BJ's is not entitled to damages because it breached the Lease by failing to perform its obligations under the Lease.

### Sixth Affirmative Defense

BJ's assumed the risk of financial harm by, *inter alia*, not terminating the Lease, not inserting dates into the Construction Timetable, proceeding with the Project without regard to the Lease terms, failing to coordinate its work with Pacifica's work, and disregarding the LDP when proceeding with construction of the Building.

### Seventh Affirmative Defense

BJ's breached the implied covenant of good faith and fair dealing in the Lease by, among other things, failing to cooperate with Pacifica in solving the problems that arose on the Project and by attempting to commandeer the Project for its own benefit and at Pacifica's expense without any legitimate basis for doing so.

### Eighth Affirmative Defense

BJ's is estopped from contending that Pacifica delayed the Project due to BJ's own delays and conduct.  BJ's is not entitled to liquidated damages for the amount of delay caused by its own actions, by unforeseen conditions, or by other circumstances for which Pacifica is not responsible.  Trinity Contracting, Inc. v. Mun. Sewage Auth. of Twp. of Sewickley, No. 523 C.D.

2015, 2015 WL 8776568, at *3-4 (Pa. Cmwlth. Dec. 15, 2015); Com. Dep't of Transp. v. W. P. Dickerson & Son, Inc., 400 A.2d 930, 932-33 (Pa. Cmwlth. 1979).

### Ninth Affirmative Defense

Pursuant to the State Litigation, including but not limited to BJ's initiating and discontinuing the State Litigation, BJ's waives any claim with respect to alleged delays incurred. BJ's acquiesced in the alleged delays and extension of the alleged construction deadline.  Coryell v. Dubois Borough, 75 A. 25, 28-29 (Pa. 1909).

### Tenth Affirmative Defense

BJ's has not suffered any compensable damages.

### Eleventh Affirmative Defense

BJ's waived its Counterclaims.  Pursuant to the State Litigation, including but not limited to BJ's initiating and discontinuing the State Litigation, BJ's waives any claim with respect to alleged delays incurred.  BJ's also waives any claim with respect to alleged delays incurred prior to the First Amendment's effective date.  BJ's also waives its claims through its conduct in connection with the payment of rent.

### Twelfth Affirmative Defense

BJ's Counterclaims are barred by the doctrine of laches.

### Thirteenth Affirmative Defense

Any delays allegedly caused by Pacifica are not on the critical path and did not cause delays in BJ's Construction Responsibilities or failure to meet established deadlines.

### Fourteenth Affirmative Defense

BJ's acquiesced in the alleged delays and extension of the alleged construction deadline.  Coryell v. Dubois Borough, 75 A. 25, 28-29 (Pa. 1909).

22

**Fifteenth Affirmative Defense**

Granting the relief sought by BJ's would be inequitable and unjustly enrich BJ's.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor on the Defendant's Counterclaims.

Dated: April 16, 2026                    Respectfully Submitted,

                                          **SAXTON & STUMP**

                                          */s/: Matthew Chabal, III*
                                          Christopher C. Conner, Esq.
                                          Attorney I.D. No. 36407
                                          cconner@saxtonstump.com
                                          Matthew Chabal, III, Esquire
                                          Attorney I.D. No. 49926
                                          mc@saxtonstump.com
                                          Jason T. Confair, Esquire
                                          Attorney I.D. No. 206729
                                          jconfair@saxtonstump.com
                                          4250 Crums Mill Road, Suite 201
                                          Harrisburg, PA  17112
                                          (717) 941-1213
                                          *Attorneys for Plaintiff*
                                          *Pacifica Mechanicsburg LLC*

23

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused the foregoing document(s) to be electronically filed on the date listed below through the Court's CM/ECF system and that this document(s) is available for viewing and download from the Court's CM/ECF system.  All counsel of record have been served by electronic means in compliance with Local Rule 5.7.


Dated: April 16, 2026                                          */s/: Matthew Chabal, III*

24